May it please the court, my name is Mark Caldwell and I'm appearing this morning on behalf of Mr. Fliss and would you be able to pull that microphone a little closer to you? Thank you. Is that better? Better. Okay. I'm appearing this morning on behalf of Mr. Fliss in this social security disability matter. I will of course keep track of my own time but I would like the court's permission to reserve time for rebuttal if possible. This case has several issues but I would like to address what I believe is the dispositive issue first and that is the opinion of the treating physician, Dr. Wilson, whose assessment led to uncontradicted vocational expert testimony. Do I need to stop a minute? No. Technical difficulties? Okay. It led to uncontradicted vocational expert testimony that a person with those limitations would be unable to sustain work. Now the administrative law judge rejected Dr. Wilson's opinion and he did so for three reasons. One, an orthopedic surgeon several years prior had released Mr. Fliss to light duty work at the second visit after the second surgery. Two. And he was a treating physician. He was a treating physician but he was a surgeon. Is that Dr. Lundquist? Lundquist. Correct. Lundquist I think. Yes. But you know he had not seen Mr. Fliss for quite some time by the time we got around to the administrative law judge hearing and Dr. Wilson was the treating physician at that period of time and parenthetically Dr. Wilson had made 24 notations in his treatment records about the claimant's pain. The second reason the administrative law judge gave was that Dr. Wilson's opinion was solicited by claimant's counsel. The district court didn't address that and I think that's a fatal flaw because nothing could be more directly contrary to this court's precedence that the reason for which an opinion is solicited is not a reason to reject it. And the third reason the administrative law judge gave was that in the administrative law judge's opinion the medical evidence did not support the limitations set forth by Dr. Wilson. In other words the physician in the record who gave that opinion. The only medical opinion was that of the administrative law judge himself. So let me come back and address these in the order that I brought them up. The Lundquist release could be considered the biggest problem in this case because as Judge Tashima mentioned he is or was a treating physician. The fact that there's a conflict in opinions, however, is not a reason to reject an opinion. It's only a reason to say there must be specific and legitimate reasons to reject the current treating physician's opinion. But what's more important than anything else here is that although the administrative law judge mentioned Dr. Lundquist's opinion, the administrative law judge did not rely on Dr. Wilson's opinion. An assessment form completed, let me rephrase that, an assessment form signed by a non-examining state agency physician who did not testify at the hearing, who did not articulate what evidence he was reviewed and gave absolutely no explanation whatsoever. But what is even more significant there is that even as the district court conceded it's pretty apparent that that assessment form was not completed by that doctor. He was a non-examining disability examiner, a non-medical personnel of the state agency who completed it, signed it on January 22nd, I think, and then Dr. Vivian comes along and says well that's okay with me and he signs it on the 23rd. So we really have reliance upon a non-medical opinion to make a medical assessment. And that's just dead flat wrong. It's unfair and it's incorrect. So that in and of itself should be That one of the, it's a variation on the theme, the sort of checklist proposition, isn't that one of the reasons that the ALJ rejected several of the doctors that Fliss put together? Because it was sort of a checklist, not a, based on medical evidence. Right. Let me give two answers to that. One, it's anomalous to say I'm going to reject the treating doctor's opinion because it's in the form of a checklist and then I'm going to turn around and adopt the checklist by the non-examining state agency doctors. If you don't like checklists you can't have it both ways. Two, that wasn't a reason given by the administrative law judge. The administrative law judge said that in the administrative law judge's opinion the form was unsupported by the doctor's treatment records. But that's just not true. As I said, there's 24 notations in Dr. Wilson's records where he says pain, range of motion, pain, range of motion, pain, over and over and over again. He tests this guy's arm and shoulder and every single time it results in pain. And he's prescribing some pretty heavy duty medications too. So it's just factually incorrect to say that the treating doctor's records don't support the assessment. Now, is it true that on the assessment form itself the doctor didn't give a big long explanation? Yes, that's true. But we have to live in the real world here. In terms of getting these doctors to even give assessments in the first place, that's like pulling teeth sometimes. But if the doctor's treatment notes show a medically determinable impairment that can reasonably be expected to lead to the symptoms, and even the ALJ conceded that, then the claimant has satisfied the test under the statute and under the Cotton decision that shows that there is a basis for the symptoms. Then, and this is kind of moving on to a different topic a bit, then if the judge chooses to reject the claimant's symptoms testimony, he has to give clear and convincing reasons, the very highest standard. And what did the judge do to reject Mr. Fliss's symptom testimony? That again resulted in vocational expert testimony. That person couldn't work. He relied on the Lindquist opinion that we've already discussed that wasn't adopted by the ALJ. And two, he relied upon the agency assessment form that wasn't even completed by a physician. So this court has at least two bases to remand for determination of benefits in this case. Dr. Wilson's opinion and the commissioner's vocational expert who gave uncontradicted testimony that that would preclude work. The claimant's testimony, which certainly failed under the clear and convincing reasons standard to be rejected. And that resulted in the commissioner's vocational expert testimony saying that person can't work. And let me throw in lastly, even the psychiatrist who gave an assessment and the vocational expert said that person can't perform any work. So we've got three different bases and against that, what have we got? We've got a checkmark form completed by a non-medical personnel. I don't think anything could be a stronger case for a claimant than those facts. May I reserve your time? May I? Thank you. Good morning, Your Honors. My name is Jaime Preciado and I represent the Commissioner of Social Security. This case really centers around the ALJ's resolution of conflicting medical evidence and substantial evidence the ALJ relied upon in this circumstance. The ALJ here is charged with resolving inconsistencies in the record and he properly served that capacity. As the district court found, the ALJ partially relied on the treating opinion of John Lundquist. He did partially rely on his opinion. Dr. Lundquist treated the claimant over a four-year period from 1997 to 2001. He performed two surgeries on the claimant's left arm, one in December of 1999 and one in April of 2000. The claimant responded well to the surgeries. On May 22, 2000, Dr. Lundquist opined that the claimant could return to light duty work, did not involve lifting more than ten pounds with his left hand, no climbing or crawling, and no pulling or pushing with his left hand. About a year, a little less than a year later, on February 21, 2001, Dr. Lundquist discharged the claimant from treatment, finding he had reached permanent and stationary status. He opined the claimant had a 50 percent reduction in strength in the left upper extremity. He was capable of performing moderate work duties, did not involve repetitive flexing and extending of the left arm, did not involve lifting more than 50 pounds. Dr. Lundquist also stated the claimant could not return to work as a roofer, which was heavy work, but he was a good candidate for vocational rehabilitation. Dr. Lundquist's treating opinion as a treating surgeon is strong evidence that the claimant can return to work here. The ALJ also properly relied on the November 18, 2002, state agency opinion of James Hopkins that the claimant could perform a range of light work, which is lifting 20 pounds occasionally, 10 pounds frequently, and standing or walking six hours on an eight-hour day. Dr. Hopkins found the claimant could frequently climb ramps and stairs as well. He could never climb ladders, ropes, and scaffolding, and he was limited to occasional reaching and handling with the left upper extremity where he had the surgery. Also, on January 23, 2003, another state agency doctor again found no limitation or a limitation to light work with a restriction added against crawling. It is unclear, because the signature of the state agency doctor is very sloppy. It appears to say JV, which would be John Vivian, a doctor for the state agency. So the age or the commissioner would state in response to claimant's argument that there was no state agency physician who reviewed the evidence, that there definitely was. The state agency physicians are charged with reviewing the medical evidence. That's their job, and that's what they did. There were two that did that here. Now, the state agency opinions, along with the treating surgeon's opinions, constitute substantial evidence upon which the ALJ relied to determine the claimant could return to at least light work. So there was substantial evidence in the record. Regarding claimant's comments he made at the end, he summarized really what he thought were the deficiencies that would tip the decision, one of which related to Dr. Wilson and the dismissiveness at that point. Would you respond to that, please? Yes. The ALJ gave specific legitimate reasons for rejecting Dr. Wilson's opinion. Dr. Wilson did use a checkmark form box to give his opinion as to the moderate severity in pain. And this was November 26, 2003. The ALJ noted that the opinion was therefore unsupported and not supported by substantial evidence. It was therefore conclusory without any evidence to back up the opinion. The district court agreed that Dr. Wilson provided no explanation to support his claims. Dr. Wilson's treatment notes did not indicate claimant suffered from severe pain or that he was unable to concentrate or attend to tasks because of pain. The district court noted that, excuse me, I'm sorry, and the district court further noted that as opposed to Dr. Lundquist's very detailed treatment notes, Dr. Wilson's treatment notes read more like diagnosis and prescription without any detail. Therefore, again, the ALJ properly rejected Dr. Wilson and relied on treating surgeon Dr. Lundquist, who was the relevant specialist regarding claimant's injuries and left upper extremity. Regarding claimant's or the ALJ's finding of a non-severe mental impairment, the district court again agreed with the ALJ's findings that he properly found claimant had a non-severe mental impairment. On July 18, 2003, an intake evaluation treatment record by Dr. Carlos Pequeno from the Mojave Mental Health Clinic noted that claimant's mental examination was negative for depression, psychosis, and anxiety. In September 2003, a psychiatric evaluation by Dr. Andrij Anari, also from Mojave, diagnosed depression and determined that claimant's global assessment functioning was between 65 to 70, which indicates only mild symptoms, but generally functioning pretty well, and that includes occupational functioning. Also, Dr. Anari noted that claimant became hostile and refused to cooperate with a psychiatric mental status examination. Claimant stated that he would not answer questions regarding the mental status examination and did not expect anything from the clinic except to get his continuation of a prescription. Claimant stated medication was effective and he preferred to stay under Dr. Wilson's care. In the event, those findings by Dr. Anari that Dr. Anari did make were benign. Claimant's thought process was noted to be coherent, goal-directed, and goal-oriented. Dr. Anari also found claimant to be alert with normal psychomotor activity. In November of 2003, Dr. Anari opined that claimant's mental impairment imposed moderate limitations in virtually every area of functioning. However, the ALJ properly gave little weight to this conclusion because it was inconsistent with his global assessment functioning finding of 65 to 70, which indicates only mild symptoms. Also, it was inconsistent with the meager evidence of a mental impairment in the record and with claimant's effective treatment regimen. There was no meaningful explanation for Dr. Anari's opinion. The ALJ also noted there was no evidence in the record of a history of mental illness or that claimant needed therapy or of any inpatient psychiatric hospitalization. District Court again agreed with ALJ's analysis that Dr. Anari never explained the basis for the moderate limitations on the checkoff form he utilized, nor did he assess any functional limitations relevant. So the ALJ also gave specific legitimate reasons for rejecting the opinion of Dr. Anari. Regarding credibility, the ALJ gave clear and convincing reasons for finding claimant not credible. In doing so, the ALJ took into account the affirmative findings of Dr. Lundquist that claimant regained the functional capacity to return to at least light work, again, plaintiff's or claimant's treating physician. The ALJ also considered that Dr. Lundquist's opinion was consistent with the state agency doctor's that claimant could perform a range of light work with limitations on his left upper extremity. The ALJ further considered that claimant responded well to surgery and to physical therapy, as noted by Dr. Lundquist. When treatment is proven to be effective, the ALJ might properly rely on such evidence to refute claimant's subjective complaints of pain. Further, after claimant's second surgery in April of 2000, he was never a candidate for any additional surgery or inpatient hospitalization, and the record support that his condition was mild and responded well to medication. The ALJ did not arbitrarily reject claimant's subjective complaints of pain, but gave clear and convincing reasons for rejecting it. In summary, substantial evidence supported the ALJ's reliance on the treating opinion of Dr. Lundquist and the state agency opinions that claimant could perform at least light work, avoiding more than occasional use of the left upper extremity. The ALJ also properly found that claimant's mental impairment was non-severe because there was little evidence of a mental impairment, and the objective evidence supported only mild symptoms. The ALJ did not find claimant's subjective complaints of pain fully credible, as they were not supported by the findings of his treating physician, Dr. Lundquist, or by the state agency's opinions. They were not supported by claimant's response to physical therapy and medication, and they were not supported by the conservative or effective treatment record. Thank you. Thank you. You have some rebuttal time. Thank you, Judge McKeown. I don't need to use all my rebuttal time. I just want to make one quick point here, maybe two. The commissioner, as he must, characterizes this case as involving conflicting medical evidence, and as we all know, an administrative law judge is entitled to resolve conflicts in the evidence, but the underlying predicate is not true. The ALJ did not adopt Dr. Lundquist's opinion, and the commissioner hasn't contended otherwise, and now for the first time in this year he said partial adoption. Well, Dr. Lundquist said the guy can lift 50 pounds, and the judge said the maximum he could lift is 20 pounds. Both of those things can't be true. However, if you go to page 20 of my opening brief, you're going to see a side-by-side comparison of the non-examining state agency assessment. For the first time in this litigation, the commissioner has stopped referring to Copeland as Dr. Copeland. For the very first time in the briefs before this court, the commissioner says it's Dr. Copeland, but during oral argument, we now know it's not Dr. Copeland, and we know that we have Copeland's signature here, and we know we have Vivian's signature underneath it with absolutely no explanation. There is no conflict in the medical evidence to resolve. Unless there are further questions, I wait for the rebuttal. Thank you. Thank you both counsel for the argument today. The case just argued of Fliss is submitted. Our next case for argument this morning is United States v. Lopez Martinez. Thank you.
judges: Tashima, McKeown, Gould